BOSTON SAFE DEPOSIT AND TRUST COMPANY *vs.* EDWARD R. KINGSBURY & others.

Suffolk. January 9, 1930. — January 28, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Probate Court*, Jury issues. *Unsound Mind.*

The denial by a probate court of a motion for the framing of an issue as to the soundness of mind of an alleged testator who had made the alleged will at the age of sixty-three years and about two years later, upon advice of a physician who had known him but had not previously attended him professionally, had voluntarily gone to a

sanatorium, where his case was diagnosed as "Neurasthenia," was proper although counsel for the contestants offered the testimony of such physician to the effect that the decedent was wanting in testamentary capacity when he made the alleged will, and that, both before and after its execution he was at times nervous, depressed and peculiar.

PETITION, filed in the Probate Court for the county of Suffolk on May 7, 1929, for the proof of the will of Frank Kingsbury Priest, who had died on April 19, 1929.

A motion for a jury issue on the question of soundness of mind of the alleged testator was heard by *Dolan,* J., upon statements by counsel, a stenographer having been appointed under G. L. c. 215, § 18, as amended. Material facts offered to be proved are stated in the opinion. The motion was denied. The contestants appealed.

*H. D. McLellan,* (*S. P. Sears* with him,) for the respondents.

*C. M. Rogerson,* (*P. F. Drew* with him,) for the petitioner.

CROSBY, J. This is an appeal from an order by a probate judge denying a motion to frame an issue as to the testamentary capacity of Frank Kingsbury Priest. The instrument offered for probate was executed April 13, 1923, when the deceased was sixty-three years of age; he died six years thereafter. When the will was executed he had an estate amounting to about $100,000. By the terms of the instrument he gave money legacies amounting to $24,000 to some of his cousins and to a friend, he disposed of certain other personal property, and the residue of his estate was placed in trust, the income to be paid to his uncle Frederick I. Pratt, who predeceased him, and the remainder to six charitable corporations. The decedent never married. His nearest relatives were cousins.

The hearing was held on statements of counsel, and a memorandum book and two check books of the decedent were admitted as exhibits. The statements of counsel for the contestants were to the effect that the decedent at the time the instrument was executed and for the following two years resided at a hotel in Boston; that the manager of the hotel in March, 1925, called Dr. Dixon to see the de-

cedent, and at the suggestion of the doctor the decedent voluntarily went to a sanatorium; that this was the only time this physician had seen him professionally, although he had known him for several years; that the doctor would testify that the decedent was wanting in testamentary capacity in April, 1923. There were other statements of counsel for the contestants as to what it was expected the evidence would be; they need not be here recited. These statements and that of Dr. Dixon who saw the decedent only once professionally, and at a time two years after the will was made, did not require the judge to allow the motion. The "Provisional Diagnosis" of the decedent's case as appeared from the records of the sanatorium is "Neurasthenia." Counsel for the proponents stated that the doctors at the sanatorium would testify that the decedent was not insane, that he never was insane, and had no mental disease; that he was depressed and a typical neurasthenic, and that they observed him for four years. Counsel for the proponents also stated that the will was prepared by an attorney, who had known the decedent for many years, had transacted other business for him, and would testify that he was of sound mind. The contestants' offers of proof show that both before and after the execution of the instrument he was at times nervous, depressed, and peculiar.

To entitle the contestants to have an issue framed, the judge must be satisfied that there is evidence of facts stated which present a genuine question for proper judicial inquiry upon which there can justifiably be based a reasonable hope for a result favorable to the contestants. The question before the judge of probate related to the testamentary capacity of the decedent on April 13, 1923. A careful examination of the entire record fails to show any error in the refusal to frame the issue. *Johnson* v. *Talbot*, 255 Mass. 155. *McCormack* v. *Quilty*, 266 Mass. 402, and cases collected. *Swift* v. *Charest*, 268 Mass. 47. The case of *New England Trust Co.* v. *Folsom*, 268 Mass. 342, is distinguishable from the case at bar.

*Order denying motion to frame issue to jury affirmed.*