CHARLES SEWALL, administrator, *vs.* ISAAC PATCH & another, executors.

Essex.   Nov. 3, 1880; Sept. 9, 1881. — March 2, 1882.   C. ALLEN, J., absent.

An administrator *de bonis non*, with the will annexed, of the estate of a person who, by his will, of which his wife was executrix, devised to her the income of his estate during widowhood, and the principal on her marriage or death, in equal shares, to his and her heirs, may maintain an action against her executor for the proceeds of certain shares of bank stock, purchased by her with money which was a part of her husband's estate, and which, standing in her name at the time of her decease, are sold and transferred by her executor, the money so used by her being all the trust estate which she held, and there being no unsettled accounts between her as trustee and the trust estate.

CONTRACT, by the administrator *de bonis non*, with the will annexed, of the estate of Epes Tarr, for money had and received, with a special count to recover the proceeds of certain shares of bank stock, sold by the defendants. At the trial in the Superior Court, before *Allen,* J., the plaintiff offered to prove the following facts:

Epes Tarr died in 1867, leaving a will, which was duly admitted to probate, appointing his wife executrix, and containing the following clause: " I devise to my wife, Martha Tarr, all my real estate and personal property, so long as she shall remain my widow, and on her decease or marriage to be equally divided between her and my legal heirs."

Martha Tarr was qualified as executrix, and returned an inventory, but never filed any account. She died in August 1876, leaving a will, of which the defendants are executors. In April 1876, Martha Tarr purchased four shares of the capital stock of the First National Bank of Gloucester, using therefor money

which belonged to the estate of her deceased husband. This stock she purchased in her own name, and a certificate thereof was issued to her in her own name without any designation of "executrix," "trustee," or otherwise. The amount of money used for this purpose was $560.

At her death the defendants returned an inventory of her estate, containing only one item, namely, these four shares of stock. She had no estate of her own, and it was known to one of the defendants, with whom she lived and by whom the purchase was made for her, that the shares were bought with money which belonged to her husband's estate. The defendants sold these shares at public auction, and they were bid off by them, two by each of them, for $569 in all, and transferred in accordance with the bids, and new certificates for two shares respectively were issued to and taken by them. The defendants have never undertaken to render any account of their testatrix's administration of her husband's estate, nor have they ever rendered any account as executors of her will. The plaintiff duly demanded a transfer of the shares, and subsequently payment of the proceeds, of the defendants.

Upon this offer of proof, the judge ruled that this action could not be maintained, directed a verdict for the defendants, and reported the case for the determination of this court. If the ruling was wrong, the verdict was to be set aside and a new trial granted; otherwise, judgment on the verdict.

The case was argued at the bar in November 1880; and was afterwards submitted on briefs.

*S. B. Ives, Jr. & C. Sewall*, for the plaintiff.

*C. P. Thompson & H. N. Woods*, for the defendants.

DEVENS, J. This case seems to us to be governed by the case of *Buttrick* v. *King*, 7 Met. 20. That was an action for money had and received, brought by the administrator *de bonis non*, with the will annexed, of the estate of John Green, against the administrator of the estate of Lois Green, the widow of John and executrix of his will. The will gave the income and improvement of all the estate of the testator, real and personal, to the said Lois during her widowhood, and the whole estate, after her marriage or death, to his children by a former marriage and their heirs; and authorized her to sell, if she thought it prudent,

any part of the real estate, the proceeds to be held subject to the like limitations and division, and to be distributed in the same manner as the original property would have been if no such sale had been made. The executrix remained a widow till her death. She had no property except what she received from her husband's estate. She owed no debts at her decease. Under the power in the will she sold certain real estate, and invested the proceeds in notes payable to herself as executrix. The defendant, as the administrator of her estate, returned an inventory in which those notes were included, and afterward collected the amount due on them, and held it in money when the action was begun against him. On these facts it was held that the action could be maintained, Chief Justice Shaw saying, in delivering the opinion of the court: " The money was held by the widow as a trust fund, she herself being entitled to the interest, for her life. Upon her decease, the administrator *de bonis non*, with the will annexed, of the husband, is the successor in that trust, and entitled to take and administer the trust fund, according to the original will. If it consisted in stocks or specific property, other than money, a bill in equity might be necessary to enable the administrator to recover it. But when it remains wholly in money, in the hands of the defendant as administrator of the widow, an action for money had and received — which is in the nature of a bill in equity — when nothing remains to be done, but the payment of money, may be maintained. This trust fund was not assets of the widow, nor could her creditors be entitled to participation in it. The whole fund must be transferred to the personal representative of the husband, as successor in the trust." This decision has been referred to and cited by the court repeatedly, and no doubt has been expressed as to its soundness, though it forms an exception to the general rule that, where no account has been settled, the remedy for one entitled to receive money from trustees is in equity. Even if treated as exceptional, it is in accordance with that current of authorities by which an action for money had and received is regarded as a remedy tending to a simple and speedy administration of justice. See *Varnum* v. *Meserve*, 8 Allen, 158. *Rogers* v. *Daniell*, 8 Allen, 343. *Rich* v. *Rich*, 113 Mass. 197. *Johnson* v. *Johnson*, 120 Mass. 465. It is true

that the case was submitted on an agreed statement of facts, with the further agreement that, if the court should be of opinion that the plaintiff was entitled to recover in any form of action, judgment should be rendered for him. But the decision rests on the ground that, on the facts agreed, the plaintiff was entitled to judgment against the defendants in their representative capacity, and for money had and received.

In the case at bar, it appeared at the trial that the defendants were the duly appointed executors of the will of Martha Tarr, and, as such executors, came into possession of, and converted into money, certain shares of bank stock which stood in her name at the time of her decease. It appeared further, that this stock was bought by the said Martha with money which was a part of her husband's estate, to the income of which she was entitled during widowhood, while the principal was given by his will, of which she was the executrix, on her marriage or death, in equal shares, to his and her heirs. According to the decision in the case above quoted from, if the stock had remained in the name of Martha, it might have been necessary for the plaintiff to proceed by bill in equity, in order to show that the specific property, which purported to be the private property of Martha, was in reality property which she held in her representative capacity only, and which ought to be transferred by her representatives to the plaintiff, her successor in the trust. The legal title was however in the defendants as executors. It was by virtue of their power as executors that they had a title to and control over the stock; as such they conveyed title to it; and, as against the plaintiff, they cannot be allowed to contend that they took such proceeds as individuals by unlawful conversion.

As the defendants have caused the stock to be sold and transferred, and the plaintiff is satisfied to receive the proceeds of the sale instead of the stock, and as those proceeds are in money, which the defendants can only claim the right to hold as belonging to the estate of Martha, and as it appears that this is all the trust estate which she held, and that there are no unsettled accounts between her as trustee and the trust estate, and nothing remains to be done but the payment of the money, there seems to be no reason why the plaintiff should not maintain his action.

We have said it appears that there are no unsettled accounts between Martha and the estate of her husband. This is the proper inference from the statement in the report that the money which was invested in the stock was money belonging to the estate of her husband, the principal of which was given to his and her heirs at law. The estate so devised was only the principal of what remained after payment of his debts and the expenses of administering on his estate. This sum was not therefore liable to be reduced by any account for services rendered or expenses incurred by Martha in her lifetime.

The result is, that the judge who presided at the trial in the Superior Court erred in ruling that the action could not be maintained. See *Arms* v. *Ashley*, 4 Pick. 71. *Gould* v. *Emerson*, 99 Mass. 154.                    *New trial granted.*